[No. 19293. Department One.—March 1, 1894.]

## THE LOS ANGELES NATIONAL BANK, RESPONDENT, *v.* J. WILEY WALLACE, APPELLANT, M. S. BABCOCK, DEFENDANT.

PARTNERSHIP—BILL DRAWN BY PARTNER UPON FIRM—NOTICE OF DISHONOR—DEMAND.—In case of a bill drawn by a partner upon the firm or upon a partnership fund in the hands of another partner, notice of dishonor is not required; and if the drawer is a debtor, and the bill so drawn is for his accommodation, failure to make due demand will not release him, but he may recoup for any damage he may have suffered by failure to make a demand.

ID.—RECOURSE OF DRAWER AGAINST PARTNERSHIP—DEMAND AND NOTICE. Where one of three partners has agreed to advance money to pay all bills drawn by another partner upon a third partner, the drawer having recourse against the partner who had agreed to pay the bills so drawn, and the drawer having no other interest in the partnership venture except a contingent interest in its success after the advances were repaid, and not being personally liable to repay them, the drawer cannot be considered as a debtor, and is entitled to demand and notice.

ID.—EXCUSE OF DEMAND—PROMISE OF DRAWER BEFORE MATURITY.—Where the drawer, three weeks before the maturity of the bills, informs the holder that the drawee could not pay, but that he would pay the bills, such promise not having been made ten days before the maturity of the bills, as provided by section 3156 of the Civil Code, will not excuse presentment to the drawee and notice to the drawer.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Stephen M. White, William D. Stephens,* and *Ben Goodrich,* for Appellant.

*M. T. Allen,* and *J. A. Donnell,* for Respondent.

TEMPLE, C.—Babcock and one Collins owned some nursery stock, which included a large number of orange trees. Wallace was an experienced horticulturist.

The three purchased from Baldwin three hundred acres of land, believed to be well adapted to the growth of oranges. Nothing was paid on account of the purchase of the land, but it was conveyed to Babcock and Wallace, who gave a mortgage upon it to secure the pur-

chase money.  Collins was a banker, and did not wish to be known in the transaction, therefore every thing was in the name of Babcock and Wallace.  Babcock and Collins were to put into the enterprise their nursery stock.  The orange trees for planting the land purchased were to come from it, and the balance of stock to be sold, and the proceeds applied to the enterprise.  Collins was to advance further money to pay expenses to the extent of thirty-five thousand dollars.  Wallace was to manage the properties, and to receive a salary of sixty dollars per month.  It was thought that it would take six years or perhaps longer to realize sufficient profit from the orchard to pay the purchase money, sixty thousand dollars, to repay Collins the advances made by him, and to pay Babcock and Collins for the nursery stock.  Payments were to be made in the order above recited.

As Collins did not wish to be known in the transaction it was arranged that the money to be advanced by him should be obtained in this way: Wallace was to draw upon Babcock, payable as convenient; Collins would then cause the bills to be guaranteed, and, when due, paid by the California National Bank of San Diego, of which he was an officer.

When the land had been paid for and the advances made by Collins refunded, and the value of the nursery stock paid, the orange orchard was to be equally divided between the three parties.

On the seventh day of September, 1891, Wallace drew two bills upon Babcock, payable on December 1st to the plaintiff.  They were duly represented to Babcock for acceptance, were accepted, and payment guaranteed by the San Diego Bank.

Some three weeks before the maturity of the bills it was understood that Collins and the bank which had guaranteed the bills were both insolvent, and Wallace informed plaintiff's cashier that he did not think Babcock had any means, or would be able to pay, but that he, Wallace, had means and would pay the bills.

At maturity of the bills it was fully known that Col-

lins and the bank were insolvent, and for that reason the . bills were not presented to Babcock when they should have been.    Plaintiff's officers knew of the arrangement between the parties when it advanced the money.

This suit was brought on the bills against Babcock and Wallace.    Judgment passed against both, and Wallace appeals from the judgment and from an order refusing him a new trial.

The bills not having been presented to Babcock for payment when they became due, nor within a reasonable time thereafter, Wallace contends that he cannot be held as drawer.

In reply, respondent contends that Babcock, Collins, and Wallace were partners; that the bills of exchange were drawn by a partner upon a partner in the business of the partnership, in pursuance of an arrangement among themselves.    Therefore the drawer was not released for want of presentation and notice of dishonor.

In the case of a bill drawn by a partner upon the firm, or upon a partnership fund in the hands of another partner, notice of dishonor is not required, because notice to either partner is notice to the firm.    Because, too, in such case the bill is really drawn by the firm upon itself and dishonored by itself.

Want of due demand is a different matter.    That demand shall be made at maturity is a condition of the contract between the drawer and the payee.    If, however, the drawer is the debtor and the bill was drawn for his accommodation, failure to make due demand will not release him, but he may recoup for any damage he may have suffered by failure to make a demand.

The question, therefore, is whether the bill was drawn for the firm?    Did it create an indebtedness on the part of the partnership?    Would Wallace have had recourse upon any one in the case of due presentment, and a refusal to pay?

It seems evident that he would have had such recourse against Collins, who had agreed to pay the bills so drawn.

Nor was Wallace or the firm liable for the indebtedness thus created. It is true provision was made for the repayment of advancements to be made by Collins. But this was contingent and in no event was Wallace to be held personally liable for it. He had an interest in it, for unless the adventure were a success he would get nothing, and if the speculation were a success Collins would be repaid.

But Wallace had no other interest in the property than the chance that there might be a profit. Further than that the risk was entirely that of Collins and Babcock. It cannot be said, therefore, that Wallace was the debtor.

As between the parties, Wallace was entitled to require Collins to pay the bill. As between them, the bill was upon an indebtedness due the firm from Collins. It was for the share which he was to contribute to the business of the firm.

Had the bills been drawn simply to obtain money to meet the current expenses of the adventure it may be conceded that all parties would have been liable, if Wallace had the requisite authority to draw the bills, but no such claim can here be made. The payee knew of the arrangement between the parties, and the purpose for which bills were drawn. It was not a trading partnership in which it is presumed that one partner has authority to bind the others in this way. In fact it was not contemplated by the parties that any such thing should be done. Wallace was merely to expend the funds provided by Babcock and Collins. He had no authority to incur indebtedness. Nor can his authority be increased by calling the relation a partnership. The parties fixed by contract their own rights and obligations. They did not call themselves partners. If it be essential to a partnership that one should have the power to bind all by drawing bills of exchange then this was not a partnership, for Wallace had no such power.

If the speculation did not prove a success, then Babcock and Wallace were to have no interest in the prop-

erty.   The fund from which Collins was to be repaid
might never exist.   If not, Collins would take the prop-
erty.   In either event the firm—if we so speak of it—
would not be liable to Collins.

Wallace and Babcock had an interest, no doubt, in
having the money repaid, for if it were not they would
get nothing, but this is not saying that they were debt-
tors.   I think, therefore, Wallace had a right to insist
upon due demand and notice.

Respondent also contends that demand was excused
because Wallace represented to its cashier that, owing
to the failure of the bank, Babcock could not pay, but
that he—Wallace—would.   The representation was not
equivalent to the statement that the bill would be dis-
honored, but had it been, the information was not
given within ten days of the maturity of the bill.   It
would not, therefore, excuse presentment and notice.
(Civ. Code, sec. 3156.)   This section works a change in
the law applicable to the subject, the reason for which
I do not comprehend.

If the demand was not made because the person
entitled to insist upon it as a condition to his own liabil-
ity prevented it by representing that it would be una-
vailing, it ought to be held a valid excuse whether the
representation were within ten days or any longer period
before the maturity of the bill.   But we cannot overrule
the express statute.

I think the judgment and order should be reversed
and a new trial had.

Belcher, C., concurred.

For the reasons given in the foregoing opinion the
judgment and order appealed from are reversed and a
new trial granted.

Garoutte, J., Paterson, J., Harrison, J.